IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B.A., J.J., J.E., D.M. and C.R.,

                Plaintiffs,                OPINION and ORDER

    v.                                      09-cv-346-bbc

BRIAN BOHLMANN,
DAVID BURNETT and
JEANNIE ANN VOEKS,
each in his or her individual capacity,

                Defendants,

    and

WISCONSIN HEALTH CARE LIABILITY
INSURANCE PLAN and STATE OF
WISCONSIN,

                Intervenor Defendants,

    and

DAVID BURNETT, JEANNE VOEKS and
STATE OF WISCONSIN,

                Third-Party Plaintiffs,

    v.

CRYSTAL M, INC., formerly known as

1

MEDICAL DOCTOR ASSOCIATES, INC.

      Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  This case involves allegations that defendant Brian Bohlmann sexually assaulted each plaintiff during separate medical examinations at the Stanley Correctional Institution. It is before the court on a motion for judgment on the pleadings filed by intervenor-defendant Wisconsin Health Care Liability Insurance Plan. The Plan seeks a declaratory judgment that it does not have a duty to defend or indemnify Bohlmann because its insurance policy with Bohlmann does not cover the claims plaintiffs are asserting.

  The question whether an insurer must defend and indemnify is determined by comparing the allegations of the complaint to the terms of the insurance policy. Estate of Sustache v. American Family Mutual Insurance Co., 2008 WI 87, ¶ 20, 311 Wis. 2d 548, 751 N.W.2d 845. (The parties agree that Wisconsin law governs.) The initial question, whether an insurer has a duty to defend, boils down to "whether, if the allegations are proved, the insurer would be required to pay the resulting judgment." School District of Shorewood v. Wausau Insurance Co., 170 Wis. 2d 347, 364-65, 488 N.W.2d 82, 87-88 (1992).

  In this case, plaintiffs allege that Bohlmann performed sexual acts on each of them during medical examinations:

2

- B.A. alleges that he complained of blood in his urine and during an examination, Bohlmann performed a rectal examination and stroked B.A.'s penis;
- J.J. alleges that he complained of an unusual discharge during a bowel movement and Bohlmann massaged J.J.'s testicles, stroked J.J.'s penis and inserted his fingers and scope into J.J.'s anus;
- J.E. alleges that he complained about frequent and bloody bowel movements and Bohlmann performed a rectal exam, asked J.E. if it made him feel like ejaculating, asked J.E. to remove the soiled glove from Bohlmann's hand after the examination and then stroked J.E.'s penis;
- D.M. alleges that he complained about testicle problems and Bohlmann performed a rectal exam on D.M. and stimulated D.M.'s penis until ejaculation, which he collected on the back of his hand;
- C.R. alleges that he complained about bladder control problems and Bohlmann put his finger and later a tool in C.R.'s rectum, pin-pricked C.R.'s genital area with the end of a jagged cut-off Q-tip; squeezed the tip of C.R.'s penis with his thumb and forefinger; required C.R. to soak in a bath and massaged C.R.'s chest, shoulder area, feet, inner thighs and abdominal area, squeezed his testicles while gripping his penis and asked if it "felt good"; at later appointments purportedly for discussing C.R.'s medications, Bohlmann again probed C.R.'s rectum, one time placing multiple fingers inside C.R.'s rectum and pushing down on his lower abdomen hard enough to feel the fingers through the stomach.

Plaintiffs further allege that "the sexual touching alleged" was "not for a legitimate medical reason but rather for Bohlmann's sexual gratification," and that no plaintiff consented "to touching for the purpose of anybody's sexual gratification." Finally, plaintiffs allege that, before Bohlmann stroked the respective plaintiffs' penises, massaged their testicles or inserted his fingers or instruments into their rectums, he failed to obtain their permission or advise any of them "of the availability of alternative, viable methods of diagnosis."

The Plan's insurance policy with Bohlmann covers "injury arising out of . . .

3

[Bohlmann's] 'professional services.'" The term "professional services" includes "providing or failing to provide health care services to a patient." The policy excludes, among other things, "liability of the 'insured' arising out of the performance of such insured of an intentional sexual act or other intentional torts."

Bohlmann asserts two grounds for coverage. First, he says that, although plaintiffs assert claims for battery and sexual assault that may not be covered under the policy, plaintiffs also assert claims that Bohlmann acted with deliberate indifference to their serious medical needs and failed to obtain informed consent. According to Bohlmann, these claims would be covered by the policy and not excluded by the "intentional sexual acts" exclusion. J.G. v. Wangard, 2008 WI 99, ¶ 22, 313 Wis. 2d 329, 753 N.W.2d 475 ("When an insurance policy provides coverage for even one claim made in a lawsuit, the insurer is obligated to defend the entire suit.") (citations omitted).

Second, Bohlmann contends that there is coverage because the alleged sexual misconduct was carried out as part of Bohlmann's examination and treatment of plaintiffs. Bohlmann points to a case in which the Wisconsin Court of Appeals concluded that a psychiatrist's sexual acts with a patient were held to be "based on professional services" because they involved the psychiatrist's handling of the patient's "transference" of feelings to the psychiatrist. L.L. v. Medical Protective Co., 122 Wis. 2d 455, 462, 362 N.W.2d 174, 178 (Ct. App. 1984); see also St. Paul Fire & Marine Insurance Co. v. Asbury, 149 Ariz.

4

565, 566-67, 720 P.2d 540, 541-42 (Ct. App. 1986) (policy covered doctor's improper manipulation of patients' clitorises while performing routine gynecological examinations because manipulation was inseparable from professional services provided).

However, in a later case, the Wisconsin Court of Appeals described the limitations of L.L.'s holding, explaining that there must be "a causal connection between the act performed by the professional 'as a professional service' and the harm to the patient." Steven G. v. Herget, 178 Wis. 2d 674, 689, 505 N.W.2d 422, 428 (Ct. App. 1993). Applying that principle, the court of appeals concluded that a dentist's sexual assault of his patients under anesthesia did not "result[] from providing or withholding of professional services," distinguishing the case from cases such as Asbury where the sexual contact was "inseparable from" the services provided, id. at 680, 690, 505 N.W.2d at 424, 428.

As the parties' briefs demonstrate, there is no clear line between L.L. and Steven G. and it remains unclear whether Wisconsin courts would follow Asbury. However, it is not necessary to decide these questions. Assuming Bohlmann is correct that Wisconsin courts would follow Asbury and that sexual contact should be covered if it is "inseparable" from professional services, there is still no coverage in this case. For most of Bohlmann's alleged actions, there is simply no argument that they have anything to do with professional services, such as his decision to insert his finger in a patient's rectum during an appointment discussing medication or stroke plaintiffs' penises for their bowel movement complaints.

5

For a few of his alleged actions, the sexual behavior appears more like professional services. For example, several instances involve his inspecting the rectum, albeit improperly, during complaints related to bowel, prostate and urine concerns, making those examinations seem more like the doctor's improper manipulation of clitorises during otherwise legitimate examinations in <u>Asbury</u>. In a vacuum, some of the rectal examinations may have seemed to have a legitimate purpose; however, Bohlmann allegedly performed them in the context of performing other assorted acts of sexual touching having nothing to do with medical care. In such a context, it would be unreasonable to infer any legitimate purpose for performing the rectal examinations. Moreover, any doubt about their legitimacy is swept away by plaintiffs' broad allegation that "the sexual touching alleged" was "not for a legitimate medical reason but rather for Bohlmann's sexual gratification."

None of the actions alleged involved the provision of professional services. Therefore, the policy does not provide Bohlmann coverage in this case. Although the inquiry may stop here, <u>Estate of Sustache</u>, 2008 WI 87, ¶ 57, 311 Wis. 2d 548, 751 N.W.2d 845, I note that even if the policy provided an initial grant of coverage for the circumstances present in this case, the exclusion for intentional sexual acts would take it away. The exclusion applies to all liability "arising out of" the performance of "intentional sexual acts," and all the medical treatment alleged in the complaint involves "intentional sexual acts." Therefore, all claims would be excluded as "arising out of" those sexual acts, including the failure to obtain

6

informed consent for the touching. (Although Bohlmann contends that the exclusion would not apply because it applies only to acts intended to harm, the language of the policy does not so limit the exclusion, unlike the policy at issue in the case he cites in support of his position. Loveridge v. Chartier, 161 Wis. 2d 150, 167, 468 N.W.2d 146, 150 (1991) (exclusion for "bodily injury or property damage which is expected or intended by the insured").)

Because the policy does not cover the conduct alleged in this case, I will grant the Plan's motion for judgment on the pleadings and declare that the Plan does not have a duty to defend or indemnify Bohlmann. Elliott v. Donahue, 169 Wis. 2d 310, 320-21, 485 N.W.2d 403, 407 (1992) (duty to defend broader than duty to indemnify).

ORDER

IT IS ORDERED that:

1. The motion for judgment on the pleadings filed by intervenor-defendant Wisconsin Health Care Liability Insurance Plan, dkt. #70, is GRANTED.

2. It is DECLARED that intervenor-defendant Wisconsin Health Care Liability

Insurance Plan has no duty to defend or indemnify defendant Brian Bohlmann in this case.

Entered this 12th day of February, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge