IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

B.A., J.J., J.E., D.M. and C.R., Plaintiff

OPINION AND ORDER

v.

09-cv-346-wmc[1]

BRIAN BOHLMANN, DAVID BURNETT and
JEANNIE ANN VOEKS, each in his or her individual
capacity, Defendants,

and

WISCONSIN HEALTH CARE LIABILITY
INSURANCE PLAN and STATE OF
WISCONSIN, Intervenor Defendants,

and

DAVID BURNETT, JEANNE VOEKS and
STATE OF WISCONSIN, Third-Party Plaintiffs,

v.

CRYSTAL M, INC., formerly known as
MEDICAL DOCTOR ASSOCIATES, INC. Third-Party Defendant.

---

In an order entered February 12, 2010, the court granted intervenor-defendant

Wisconsin Health Care Liability Insurance Plan's motion for judgment on the pleadings,

concluding that the four corners of the first amended complaint imposed no duty on the

Plan to defend or indemnify defendant Brian Bohlmann. (Dkt. #88.) Pursuant to a

procedure encouraged by Wisconsin Appellate Courts, the Plan then moved on March 3,

2010, for the entry of a final judgment in its favor under Federal Rule of Civil Procedure

---

[1] The reassignment of this case was part of the court's general administrative order dated
March 31, 2010.

54(b), as well as for a stay of proceedings pending expiration of the time to appeal or resolution of any appeal from that judgment. (Dkt. #92.) Shortly thereafter, this case was reassigned along with approximately half the court's docket, from Judge Crabb to Judge Conley. About the same time, plaintiffs also sought leave to file a second amended complaint. (Dkt. #105.)

Though now long overdue, the purpose of this order is to resolve all pending motions, including one recently filed by plaintiffs seeking to (1) extend again the time it must disclose expert witnesses and (2) push back again the trial of this matter. (Dkt. #150.) For the reasons that follow, plaintiffs' motion for leave to file a second amended complaint will be granted in part and denied in part; the Plan's motion for entry of a final judgment under Rule 54(b) will be denied rendering its motion to stay proceedings moot; and plaintiffs' motion to modify the scheduling order in this matter will also be denied. The court will hold an in person status conference with the parties to address how best to bring this matter to trial as currently scheduled.

## BACKGROUND

This court's original, partial judgment in favor of the Plan was by definition based on allegations in plaintiffs' first amended complaint. If plaintiffs were given leave to file a second amended complaint, this original coverage determination would at least arguably need to be revisited. *See Charter Oak Fire Ins. Co. v. Hedeen & Cos.*, 280 F.3d 730, (7th Cir. 2002) (concerning duty to defend based on allegations in amended complaint filed more than one year after the original complaint).

2

According to plaintiffs, however, their proposed second amended complaint is not likely to change, nor is it intended to work a change, on this earlier determination that the Plan owes no duty to defend or indemnify defendant Bohlmann, in the matters in suit, because the allegations related to the coverage question have not been changed in their "essence." (Pls.' Br. (dkt. #105) at 5.) There is, however, reason to question whether defendant Bohlmann would agree or raise no new arguments about coverage. Specifically, plaintiffs' amendment modifies the current allegation that defendant Bohlmann's sexual touching "was not for a legitimate medical reason," adding "[t]o the extent that touching alleged above was sexually motivated." (Proposed Second Am. Compl. (dkt. # 105-1) ¶ 536.) Defendant Bohlmann may argue this language important in light of the fact that the court noted in its order granting the Plan's motion for judgment on the pleadings that "any doubt about [the] legitimacy [of the alleged sexual touching] is swept away by plaintiffs' broad allegation that 'the sexual touching alleged' was 'not for a legitimate medical reason but rather for Bohlmann's sexual gratification.'" (Dkt. #88 at 6.)[2]

Even if this court ultimately agreed with plaintiffs' characterization of the amendments, granting leave to file a second amended complaint arguably requires the

---

[2] Indeed, Bohlmann seems to have picked up on this argument and in a recently-filed memorandum, is urging the court to decide plaintiffs' motion for leave to file a second amended complaint before deciding the Plan's motion. (Dkt. #166.) Bohlmann now contends: "If plaintiffs are allowed to file a Second Amended Complaint, then, that first decision will no longer apply. The Court will necessarily have to vacate Judge Crabb's decision granting WHCLIP's initial motion and give the parties the opportunity to file motion papers addressing the availability of insurance coverage under the allegations in the Second Amended Complaint." (*Id.* at 2.)

Plan to renew its cross-claim for declaratory judgment on the pleadings, or as discussed below to seek judgment on the facts of record, and defendant Bowman would be entitled to argue the relevance of any differences. Whether or not the result would be the same, the possibility of an amendment muddles any determination that the court's original ruling on the intervener-defendant's duty to defend, much less to indemnify, is truly ripe for certification of an interlocutory appeal pursuant to Federal Rule of Civil Procedure 54(b). Plaintiffs' later-filed motion for leave to file a second amended complaint is, for this reason alone, appropriately decided first.

## OPINION

### A. Motion for Leave to File Second Amended Complaint

Plaintiffs seek leave to file a second amended complaint to (1) add claims against third-party defendant Crystal, Inc. for negligent hiring or placement of defendant Bohlmann under a theory of *respondeat superior*, (2) "clarify" allegations related to plaintiffs' claims against defendant for lack of consent and lack of informed consent, and (3) correct minor typographical errors.[3]

Only the first two bases for amending the complaint are in dispute. As for the third reason, the typographical corrections merely involve dates that certain incidents occurred. No party is challenging these changes and the court will grant leave to file a

---

[3] Plaintiffs also moved for leave to file a reply brief in support of their motion for leave to file a second amended complaint. (Dkt. #118.) That motion will be granted and the proposed reply brief is considered here.

4

second amended complaint with these specifically-identified typos corrected.

Both the Plan and Crystal oppose the remainder of plaintiffs' motion, however, arguing that: (1) plaintiffs have failed to show good cause for amending the pleadings after expiration of the scheduling order's deadline; (2) plaintiffs have unduly delayed bringing the new claims; and (3) the Plan and Crystal would be prejudiced if the motion is granted. In addition, Crystal contends that it would be futile to add the new claims against it because those claims would not survive a motion for summary judgment, citing *Sound of Music Co. v. 3M,* 477 F.3d 910, 923 (7th Cir. 2007).

While courts should "freely give leave" to amend pleadings "when justice so requires," Fed. R. Civ. P. 15(a)(2), "leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir. 1991) (citing *Foman v. Davis,* 371 U.S. 178, 183 (1962)). Where a scheduling order is in place, such as here, modification of the order requires a showing of "good cause." Fed. R. Civ. P. 16(b)(4); *see also Trustmark Ins. Co. v. General & Cologne Life Re of Am.,* 424 F.3d 542, 553 (7th Cir. 2005) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment.") (quotation marks and citation omitted).

Most of the Plan's and Crystal's initial concerns about prejudice ring hollow in light of the court amending the scheduling order in this case, allowing the parties until November to file dispositive motions and until February *2011* to finish discovery. Given

5

this schedule, there is time to address changes in the lawsuit precipitated by the amendment without prejudice to any party.

Still, there remains the question of whether the plaintiffs acted with undue delay, bad faith or dilatory motive or whether they were diligent in seeking leave. The court reaches different conclusions to this question with regard to (1) proposed amendments which add claims against Crystal and (2) adding "clarifying language" concerning the informed consent claim.

First, as to plaintiffs' motion to add claims against third-party defendant Crystal, Inc., plaintiffs contend that "it was reasonable for them to wait until a substantial corpus of discovery had been received and then evaluate the case to determine whether amending the complaint was called for, rather than to move for piecemeal amendments." (Pls.' Reply (dkt. #118-2) at 2.) The court finds the plaintiffs' contention that discovery aided in their determination to bring negligent hiring and vicarious liability claims against Crystal reasonable and a sound basis for delaying amendment of their complaint to add these claims.

Crystal argues that these new claims are unlikely to survive a motion for summary judgment, and therefore plaintiffs' efforts to add claims against Crystal are futile. The "general rule" in Wisconsin is that "one who contracts for the services of an independent contractor is not liable for [his] acts." *Lofy v. Joint Sch. Dist. No. 2, City of Cumberland*, 42 Wis. 2d 253, 263, 166 N.W.2d 809, 813 (1969). This rule bars not only claims for liability derived from the theory of *respondeat superior*, but also claims for negligent hiring or supervision, which involve acts of "omission" rather than "commission." *See Wagner v.*

6

*Cont'l Cas. Co.*, 143 Wis. 2d 379, 390, 421 N.W.2d 379, 382 (1988) ("a principal employer or general contractor owes no duty to an independent contractor's employee to carefully select the independent contractor").

The evidence in the record to date all points to a finding that defendant Bohlmann was an independent contractor of Crystal (then known as Medical Doctor Associates, Inc.). Bohlmann agreed in his contract with MDA to "provide medical services as an independent contractor" and agreed that "at all times during this agreement, [Bohlmann] is and will be an independent contractor and not an employee of MDA." Regarding medical care, Bohlmann further agreed to "use only medically acceptable techniques and procedures," "comply with all hospital, state and national requirements" and "exercise the highest professional standards in providing medical care," again as "an independent contractor . . . responsible for his . . . own medical decisions and actions."

Against this, plaintiffs point out that the standard for determining whether *respondeat superior* applies requires looking not just to the parties' agreement, but to Crystal's "right to control" Bohlmann, "including the place of work, the time of the employment, the method of payment, the nature of the business or occupation, which party furnishes the instrumentalities or tools, the intent of the parties to the contract, and the right of summary discharge of employees." *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis. 2d 188, 198-99, 423 N.W.2d 848, 852 (1988). The difficulty with this response is that plaintiffs' proposed, second amended pleading still contains no facts that would undermine the parties' otherwise straightforward independent contractor agreement.

7

Plaintiffs do point to the fact that, unlike the defendants in *Pamperin* or in a similar case, *Kashishian v. Port*, 167 Wis. 2d 24, 33-37, 481 N.W.2d 277, 280-81 (1992), there has been no evidence here that Bohlmann maintained a separate office or billed the Department of Corrections for his services; nor that Bohlmann's medical records became MDA's property. Plaintiffs add that Bohlmann lacked job security because under the contract he could be terminated for cause "without notice" or without cause on 30-days notice.

Under *Sound of Music*, 477 F.3d at 922-23, the question at this stage is whether there is evidence in the record to support plaintiffs' claims, not whether plaintiffs may be able to find something through additional discovery. Plaintiffs' vague allusion to an absence of proof that Bohlmann maintained a separate office or billed the Department directly is not enough to support a finding that Bohlmann was Crystal's "servant." The only contrary *evidence* plaintiffs offer are the terms establishing that Bohlmann could be terminated on short or no notice. These provisions alone do not undermine the basic terms of the agreement establishing Bohlmann as an "independent contractor." Moreover, the agreement establishes that MDA left Bohlmann with control of medical treatment, agreeing that he would be "responsible for his . . . own medical decisions and actions" and requiring that he "use only medically acceptable techniques and procedures," "comply with all hospital, state and national requirements" and "exercise the highest professional standards." Given the paucity of facts offered the court in support of this later-filed motion for leave to file a second amended complaint, the plaintiffs' motion will be denied in so far as it purports to add claims against Crystal.

8

As for plaintiffs' proposed "clarifications," a review of the second amended complaint shows them to be of two sorts: (1) moving around certain allegations about lack of consent and informed consent, and (2) the softening of allegations that the alleged sexual touching was "not for a legitimate medical reason." Plaintiffs' first amended complaint already contains a claim for lack of informed consent. (First Am. Compl. (dkt. #55) ¶¶ 529-59.) Plaintiffs are not attempting to add new claims. Unlike the newly-asserted claims against Crystal, however, plaintiffs offer no just basis for their delay in proposing these amendments.

Notwithstanding plaintiffs' assertion that they do not intend to alter the allegations in a way that would expand coverage or reopen the question of coverage (*see* Pls.' Reply (dkt. #118-2) 7), the proposed amended pleading could have that affect. Indeed, both the timing of plaintiffs' motion -- filed a month after the court's coverage decision -- and the seemingly strategic changes in the language of the informed consent claim as discussed above (*see supra* p.3 & n.2) understandably prompt the Plan to question whether plaintiffs' request to clarify even the informed consent language is really an attempt to fit the alleged facts within the Plan's scope of coverage. Regardless, plaintiffs fail to offer any valid reason for the delay in seeking to amend the complaint yet again and, therefore, the court will deny their motion to add clarifying language to the informed consent claims.

## B. Entry of Final Judgment Under Rule 54(b)

The Plan has repeatedly urged entry of final judgment on its declaratory

9

judgment, noting that all but one party has no objection to an expedited, final resolution of its duty to defend and indemnify, and even that one, defendant Bohlman, only asks for a stay of all proceedings during any interlocutory appeal. Still, notwithstanding this apparent consensus in favor of 54(b) certification, the bar remains high for a district court to certify appellate review before entry of final judgment because of the potential for harassment and expense that would otherwise accompany a succession of separate appeals and the potential for judicial inefficiency in piecemeal review on an incomplete record. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981).

This court is certainly sympathetic to the Plan's desire for more immediate certainty than typically afforded third-party insurance companies in federal court. Under Wisconsin law, an insurer risks breaching its duty to defend if it stops defending the insured before receiving a "final decision" on coverage, and a trial court's determination is not a "final decision" even if timely appealed after trial. *Newhouse by Skow v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 836, 501 N.W.2d 1, 6 (1993). For this reason, Wisconsin courts have in recent years "offered" insurance companies the opportunity "to request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved." *Id.* Offered is in quotes because failure to follow this procedure in Wisconsin state court could result in an insurance company being (1) barred from raising any defenses as to coverage and (2) liable for a judgment in excess of policy limits. 176 Wis. 2d at 838-39.

In light of this case law, it is perhaps unsurprising that no party argues the Plan lacks a basis to seek Rule 54(b) certification. But a procedure adopted by Wisconsin

10

courts -- allowing certification of coverage issues for interlocutory appeal -- does not relieve this court of its obligations under the Federal Rules of Civil Procedure. A federal court "is bound by state substantive law but applies its own procedural rules." *Wallace v. McGlothan*, 607 F.3d 410, 419 (7th Cir. 2010) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). *See also Estate of Watts v. Heine*, No. 07-CV-644, 2008 WL 4056317, at \*2 (E.D. Wis. Aug. 25, 2008) (denying insurer's motion for bifurcation and stay).

The Plan's request for certification of the court's determination as to coverage goes hand in hand with its motion to stay. Although conceivably the court could grant the Plan's motion for final judgment while at the same time denying a motion to stay, this result would provide limited value to the Plan. As Bohlmann points out, allowing an immediate appeal to proceed on the insurance defense question "will serve no meaningful purpose unless the court also stays the merits of the case," because "[w]ithout a stay, it is likely that the merits will be tried by the time an appellate decision is received on coverage" and either the Plan would have already paid the defense costs it seeks to avoid or Bohlmann will have to pay for his own defense "until he succeeds on appeal." (Def.'s Br. (dkt. #98) at 3.)

For this reason, certification of the coverage issue for interlocutory appeal would require a stay of the principal claims in suit that have already lingered too long and will have to be resolved regardless of the outcome of an interlocutory appeal on coverage. An open-ended stay pending appeal also means factors outside this court's control will determine the length of stay, which could run anywhere from six months to a year or more. Such a delay to do nothing more than resolve a secondary issue in this case is

11

unfair to the plaintiffs and, in any event, counter to this court's general policy to disallow stays of uncertain length. *See N.B. v. Wausau Sch. Dist. Bd. of Educ.*, 567 F. Supp. 2d 1055, 1056 (W.D. Wis. 2007) ("Although I understand the awkward position State Farm is in, this court is not in the habit of staying a case for months or even years while one insurance company seeks an appellate ruling on an issue that is tangential to the case. Doing so is unfair for plaintiffs and creates an unacceptable delay for the court."). This court's reluctance to stay this case indefinitely pending appeal is also consistent with the Seventh Circuit's general disdain for interlocutory appeals as tending to promote delay and inefficiency. *See Herdrich v. Pegram*, 154 F.3d 362, 367-68 (7th Cir. 1998), *rev'd on other grounds*, *Pegram v. Herdrich*, 530 U.S. 211 (2000).

Even if an open-ended delay could be justified in some cases, there are limited efficiencies to be gained from allowing an interlocutory appeal at this stage of the present litigation.[4] Given the court's partial rejection of plaintiffs' motion for leave to file a

---

[4] Cases in which district courts in our circuit have certified a no-coverage decision as final for purposes of appeal pursuant to Rule 54(b) involve summary judgment decisions where the appeal consists of a robust record beyond the allegations in the complaint. *See, e.g., Eberts v. Goderstad*, 569 F.3d 757 (7th Cir. 2009) (appealing summary judgment for the insurer and considering meaning of "occurrences" and "accidents" in insurance policies in light of Wisconsin law); *U.S. Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153 (7th Cir. 1997) (appealing coverage decision made at summary judgment stage concerning whether Illinois statute requiring car rental companies authorized to do business in Illinois to provide minimum coverage applied to out-of-state rental); *Sybron Transition Corp. v. Sec. Ins. Co. of Harford*, 107 F.3d 1250 (7th Cir. 1997) (appealing summary judgment for insurer and considering impact of delay in providing notice on coverage determination); *Granite State Ins. Co. v. Degerlia*, 925 F.2d 189 (7th Cir. 1991) (appealing summary judgment for insurer on declaratory judgment action, considering scope of exclusion for bodily injury provision in policy); *Mut. Serv. Cas. Ins. Co. v. Country Life Ins. Co.*, 859 F.2d 548 (7th Cir. 1988) (appealing partial summary judgment for insurer and determining whether breach of contract claims fell within policy); *Walker v.*

12

second amended complaint, and the fact that the summary judgment deadline fast approaches, plaintiffs are unlikely to be allowed any further amendments to their pleading, but an amendment impacting the coverage determination cannot yet be wholly ruled out upon a proper showing, even at this late date. And, if granted, an amended pleading might yet contain facts which would alter both the Plan's duty to defend and cover.[5]

For this reason, drawing a line in the sand at this point in the litigation and reaching a final decision as to coverage when pleadings are still subject to change, Wisconsin courts are effectively allowing interlocutory appeals to go forward which may not even result in a final resolution of the duty to defend and of coverage (at least if the Plan's representation of state court procedure is accurate). Even if this possibility did not exist, allowing an insurance company's third-party dispute to take precedence over the principal dispute between the original parties will seldom be fair or just, and certainly will be neither speedy, nor efficient.

The Plan's principal justification for its appeal to take center stage is the fear that, under Wisconsin law, the Plan will be estopped from later raising any defense as to coverage and specifically could be liable for a judgment in excess of its policy limits,

---

*Maccabees Mut. Life Ins. Co*, 753 F.2d 599 (7th Cir. 1985) (appealing partial summary judgment for insured, determining application of Wisconsin's extension of benefits rule under accidental death and dismemberment insurance policy).

[5] The court is mindful that a duty to defend and cover must be determined by reference to the four corners of the complaint, *see Newhouse*, 176 Wis. 2d at 835, but (as previously noted) the duty to defend and coverage issues can be reevaluated with the filing of subsequent pleadings.

unless it continues to take on the costs of defense.  No doubt this is an unhappy choice

for the Plan.  But should the Plan now refuse to finance Bohmann's further defense and a

court were later to find a breach of the duty to defend, it is certainly questionable

whether the Plan would be susceptible to such draconian consequences given the Plan's

diligent and prompt efforts here to employ Wisconsin's procedure.  *See Liebovich v. Minn.*

*Ins. Co.*, 2008 WI 75, ¶ 55, 310 Wis.2d 751, 751 N.W.2d 764 ("A unilateral refusal to

defend without first attempting to seek judicial support for that refusal *can* . . . stop

insurers from being able to further challenge coverage.") (emphasis added); *Newhouse*, 176

Wis. 2d at 836 ("[T]he proper procedure for an insurance company to follow when

coverage is disputed is to *request* a bifurcated trial on the issues of coverage and liability

and *move to stay* any proceedings on liability until the issue of coverage is resolved.")

(emphasis added); *see also Carney v. Village of Darien*, 60 F.3d 1273, 1277 (7th Cir. 1995)

("An insured seeking a preliminary determination by the court on coverage *can* either

request a bifurcated trial on the issues of coverage and liability, and move to stay any

proceedings on liability until after the coverage issue is resolved, or seek a declaratory

judgment to obtain a resolution of coverage prior to the liability trial.") (emphasis

added).

More to the point, insurance companies are in the *business* of measuring risks.

This risk in particular is one the Plan was, or certainly should have been, aware of when

issuing and establishing the premiums under the insurance plan.  Should defendant

Bohlmann appeal this court's coverage determination, the Plan remains in the best

position to weigh the likely costs of continuing to pay for a defense it maintains

Bohlmann is not entitled to receive against the potential risk of reversal of this court's coverage decision on appeal, including the arguable potential for an open-ended damage award. Indeed, this is exactly what the Plan has been doing to date. The court is strongly disinclined to adopt a new approach that relieves the Plan (or any other insurance company) of *any* risk where the price is an unreasonable delay in a final resolution for all parties and the court.

ORDER

IT IS ORDERED that:

1) the motion for leave to file a reply brief filed by plaintiffs B.A., J.J., J.E., D.M. and C.R. (dkt. #118) is GRANTED;

2) plaintiffs' motion for leave to file a second amended complaint (dkt. #105) is GRANTED IN PART AND DENIED IN PART. Plaintiffs should file and serve a second amended complaint consistent with this court's opinion and order;

3) intervenor-defendant Wisconsin Health Care Liability Insurance Plan's motion for entry of final judgment under Rule 54(b) (dkt. #92) is DENIED;

4) Wisconsin Health Care Liability Insurance Plan's motion to stay proceedings pending appeal (dkt. #92) is DENIED AS MOOT;

5) plaintiffs' motion to extend the date for disclosure of experts and extend the trial date (dkt. # 150) is DENIED; and

6) an in person status conference will be conducted in this matter on October 22, 2010 at 1:00 p.m.

Entered this 15th day of October, 2010.

BY THE COURT:

WILLIAM M. CONLEY
District Judge